Kenneth P. NOLAN, As Administrator of the Estate of Jean Johnson, et al., Plaintiffs–Appellants,

v.

The BOEING COMPANY, Defendant–Third Party Plaintiff–Appellee.

GENERAL ELECTRIC COMPANY and CFM International, Inc., Defendants–Appellees,

v.

SOCIETE NATIONALE d'ETUDE et de CONSTRUCTION de MOTEURS d'AVIATION, S.A., Third–Party Defendant–Appellee.

No. 89–3793.

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1990.

Stephen B. Murray, C. Joseph Murray, M. Allyn Stroud, Murray Law Firm, New Orleans, La., Charles F. Krause, James Teague Crouse, Speiser, Krause & Madole, San Antonio, Tex., for Kenneth P. Nolan, et al.

Howard J. Daigle, Jr., Anita M. Warner, Keith Gerrard, Richard Coyle, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Boeing Co.

Kenneth H. Laborde, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for General Elec. Co., CFM Intern. and Societe Nationale.

Randal R. Craft, Jr., Haight, Gardner, Poor & Havens, New York City, for Societe Nationale.

Before GARZA, JOLLY, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The principal questions presented for decision here are: (1) the scope, indeed the existence, of pendent party jurisdiction under the removal provision of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1441(d); (2) the effect on third-party removal of a state court order separating the third party claims from those in the main action for purposes of trial; (3) the right to conduct discovery for purposes of proving collusion to create federal subject matter jurisdiction; and (4) the applicability of *forum non conveniens* to a case removed from a jurisdiction that does not recognize that doctrine. The complex procedural course that preceded this appeal empirically validates the construction of the removal provision of the Foreign Sovereign Immunities Act that we adopt. We affirm the district court's determination that, although it had subject matter jurisdiction over the parties' claims, the claims were properly dismissed on grounds of *forum non conveniens*.

I.

This case arises out of the crash of a Boeing 737–400 aircraft en route from London, England to Belfast, North Ireland. The aircraft was operated and maintained by British Midland Airways (BMA), a United Kingdom (U.K.) corporation. Virtually all the passengers carried by the aircraft were U.K. subjects or residents; none of them were American citizens or residents. Notwithstanding the passengers' foreign citizenship, the plaintiffs are Kenneth P. Nolan and Vernon T. Judkins, American attorneys who were appointed administrators, curators, and/or tutors of the 225 persons (or family members of persons) injured or killed in the accident.[1]

Nolan and Judkins commenced this action on April 12 and 13, 1989 by filing sixteen separate personal injury suits in

---

1. 126 persons—118 passengers and eight crew members—were on board BMA Flight 92. Forty-seven persons were killed and the remaining 79 suffered injuries. Messrs. Nolan and Judkins assert claims in a representative capacity on behalf of the estates of the 47 decedents, 76 of the injured passengers and their family members, and two persons who suffered injuries in the aftermath of the crash.

Louisiana state court.[2] Named as defendants were the Boeing Company, the designer and manufacturer of the aircraft; General Electric Company (GE), the designer and manufacturer of portions of the aircraft's engines; and CFM International, Inc. (CFMI), a participant in the marketing of the aircraft's CFM56–3C–1 engines. On May 11, the defendants removed all sixteen cases to the United States District Court for the Eastern District of Louisiana on grounds of diversity jurisdiction. 28 U.S.C. § 1332. The plaintiffs sought remand, claiming lack of complete diversity among the parties.

Boeing is a Delaware corporation with its principal place of business in the State of Washington; CFMI is a Delaware corporation with its principal place of business in Ohio; and GE is a New York corporation with its principal place of business in New York. Nolan and Judkins, the plaintiffs' appointed representatives, are citizens and residents of New York and Washington, respectively. As the plaintiffs admitted, their sole reason for appointing domiciliaries of those states to act as administrators was to avoid diversity of citizenship and prevent the removal of their actions to federal court. Bound at that time to recognize the citizenship of the plaintiff's appointed representatives for diversity purposes,[3] the federal district court granted plaintiffs' motion to remand the cases to state court.

Back in state court, the judge scheduled a status conference at which Boeing obtained leave to file third-party demands for contribution and indemnity against Societe Nationale d'Etude et de Construction de Moteurs d'Aviation, S.A. (SNECMA), a concern owned by the French government that manufactured the aircraft's engines. Engine malfunction or pilot error are prime suspects as the cause of the crash.

Two days later, the plaintiffs arranged, in an *ex parte* proceeding, for the state judge to "sever" Boeing's third-party demands against SNECMA from the principal actions. Each case, however, remained as one action with one docket number.

On August 17, 1989, SNECMA removed these sixteen civil actions to federal district court pursuant to 28 U.S.C. § 1441(d) and relevant provisions of the Foreign Sovereign Immunities Act of 1976 (FSIA). SNECMA, as a commercial entity owned by a foreign sovereign, is authorized to insist upon the protection afforded by the FSIA. The plaintiffs immediately filed another motion to remand, urging that, at best, SNECMA's actions resulted only in the removal of the third-party demands, not removal of the actions in their entirety. Alternatively, the plaintiffs requested discovery on two jurisdictional issues: whether Boeing's third-party demand against SNECMA was a product of improper collusion filed solely for purposes of creating removal jurisdiction; and whether the federal court lacked subject matter jurisdiction over the entire case because SNECMA was immune from suit in the United States under the FSIA. The district court, consolidating the actions, rejected the plaintiffs' motions.

Following the district court's order denying remand, Boeing moved to dismiss the sixteen actions on the ground that the United States constituted an inconvenient forum in which to resolve these disputes. The district court granted this motion, noting that "this tragedy's slight contacts with the United States and its complete lack of contact with Louisiana, in comparison with the extensive contacts these

---

**2.** The plaintiffs have no previous connection with the state of Louisiana. Similarly, none of the defendants are citizens of Louisiana and, although Boeing conducts business in Louisiana, none of the activities out of which the defendants' alleged liability arises took place in Louisiana.

**3.** In reaching its conclusion, the district court relied upon the Supreme Court's decision in *Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183,

52 S.Ct. 84, 76 L.Ed. 233 (1931). Effective May 18, 1989, Congress statutorily overruled a substantial portion of *Mecom* by an amendment to 28 U.S.C. § 1332 which provides that the citizenship of certain represented parties controls for purposes of diversity. However, these cases were removed on grounds of diversity one week before the date of the amendment and were thus controlled by *Mecom*.

events have with the United Kingdom," plainly demonstrated that "the record [was] without any justification for imposing the burden of this litigation on this forum." The plaintiffs filed a timely appeal.

## II.

Appellants initially challenge the district court's refusal to remand the entirety of the cases, or at least appellants' claims against the defendants, to state court. According to the appellants

[t]he district court erred as a matter of law when it denied Plaintiffs' Motion to Remand and held that removal by third-party defendant SNECMA effectuated removal of the entire case under 28 U.S.C. § 1441(d). First of all, there is no independent basis for the exercise of federal jurisdiction over the main actions, and there is no constitutional or statutory basis for the exercise of "pendent party" jurisdiction over those actions. Secondly, 28 U.S.C. § 1441(d) only authorizes the removal of civil actions "brought ... against a foreign state ..." *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003 [104 L.Ed.2d 593] (1989). The only actions brought against a foreign state were the third-party actions asserted by Boeing. Therefore, only the third-party demands are removable and the district court should have remanded the main actions to state court.

*Alifieris v. American Airlines, Inc.*, 523 F.Supp. 1189 (E.D.N.Y.1981). The linchpin of this argument is its reliance on *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which, in appellants' interpretation, excludes the possibility that a third-party defendant such as SNECMA may ever remove an entire civil action to federal court, or alternatively, compels the conclusion that section 1441(d) does not so provide. These are not frivolous contentions, but careful examination reveals flaws in their logic.

*Finley* articulates a deceptively seamless web governing the analysis of "pendent party" jurisdiction.[4] The opinion begins with the indisputable premise that the jurisdiction of the federal courts is limited by both the Constitution and enabling statutes. The problem confronting the Supreme Court in *Finley* was the extent to which a federal court has jurisdiction to determine a case against a party based on a non-diverse, non-federal cause of action, simply because the court also had jurisdiction over a Federal Tort Claims Act case against the United States arising from the same set of facts. Without undermining the long-established doctrine of pendent claim jurisdiction, the Court in *Finley* differentiated and limited "pendent party" jurisdiction, defined as "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." 109 S.Ct. at 2006. The Court as-

**4.** The precise meaning of *Finley* has engendered a tremendous disarray of authority in the federal courts. *See* Perdue, *Finley v. United States: Unstringing Pendent Jurisdiction*, 76 Va.L.Rev. 539, 570–72 (1990). Some courts analyze pendent party jurisdiction as if *Finley* were never decided. *See Rodriquez v. Comas*, 888 F.2d 899, 905–06 (1st Cir.1989), amending 875 F.2d 979 (1st Cir.1989); *Armstrong v. Edelson*, 718 F.Supp. 1372, 1376 (N.D.Ill.1989); *640 Broadway Renaissance Co. v. Cuomo*, 714 F.Supp. 686, 690 (S.D.N.Y.1989). Two cases actually cite *Finley* for the proposition that the relevant statutory inquiry is whether Congress expressly or impliedly intended to negate pendent party jurisdiction. *Armstrong*, 718 F.Supp. at 1376; *Cuomo*, 714 F.Supp. at 690. This is the precise inquiry that the majority seemed to eschew in *Finley*. *See* 109 S.Ct. at 2009. Some courts simply assume that *Finley* eliminates pendent

party jurisdiction altogether. *See, e.g., Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989); *North Star Contracting Corp. v. Long Island R.R. Co.*, 723 F.Supp. 902, 912 (E.D. N.Y.1989); *Brown v. American Arbitration Ass'n*, 717 F.Supp. 195, 198 (S.D.N.Y.1989); *Birkinshaw v. Armstrong World Indus.*, 715 F.Supp. 126, 127 (E.D.Pa.1989). One court goes so far as to say that *Finley* casts into doubt the propriety of ancillary jurisdiction over impleader claims. *Community Coffee Co. v. M/S Kriti Amethyst*, 715 F.Supp. 772, 773–74 (E.D.La. 1989). Other courts acknowledge that *Finley* narrowed the grounds of pendent party jurisdiction, but insist that the Supreme Court did not completely eliminate the doctrine. *See, e.g., Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir.1989); *Bruce v. Martin*, 724 F.Supp. 124, 130 (S.D.N.Y.1989).

sumed without deciding that if pendent party jurisdiction accords with Article III, its constitutional formulation is analogous to that which supports pendent claim jurisdiction. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). From there, two additional analytical factors were deemed significant. First, the Court considered the "posture in which the non-federal claim is asserted," and found that the added claims in *Finley* "involve[d] added parties over whom no independent basis of jurisdiction exists." 109 S.Ct. at 2008. Second, the Court found that the language of the jurisdictional statute governing the federal claim, 28 U.S.C. § 1346(b), suggested that Congress authorized federal courts to exercise jurisdiction only over claims against the United States "and no one else." *Id.*

Purporting to rely on *Finley,* the appellants argue here that neither the Constitution nor any statute sanctions the district court's exercise of jurisdiction over the main claims in this action. We address these arguments in turn.

■■■ Contrary to appellants' position, the constitutional problem facing the Court in *Finley* does not exist in this case. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that claims not arising under Article III that are coupled with claims that do arise under Article III may be asserted in federal court provided all of the claims constitute part of the same "case." In *Finley,* the Court assumed, without deciding, that the *Gibbs* analysis of federal question "cases" involving pendent *claims* applies equally to federal question "cases" involving pendent *parties.* 109 S.Ct. at 2006–07. The *"Gibbs* problem," clearly enunciated by the Supreme Court, concerns the constitutional authority of the federal courts to determine a claim founded on a non-diverse, non-federal cause of action simply because it is asserted in conjunction with another federally cognizable claim. That exact problem does not exist here, and we, like the Court in *Finley,* need not address the constitutional aspect of pendent party jurisdiction. The federal court was constitutionally able to hear the main claims as well as the third-party claims in this case. Article III of the Constitution extends the judicial power of the federal courts to "[c]ontroversies ... between citizens of different states ... and [controversies] between a State, or Citizen thereof, and foreign States, Citizens, or Subjects." This language merely requires minimal diversity in order to maintain a claim in federal court. *See State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 531, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967). Thus, as long as any two adverse parties are not co-citizens, the Constitution poses no obstacle to the federal courts' exercise of subject matter jurisdiction. *Id.* The citizenship of the parties to the main claims, described previously, establishes minimal diversity.

■■■ Indeed, at the time SNECMA removed these actions to federal court in August 1989, there was actually *complete* diversity between the plaintiffs and defendants pursuant to 28 U.S.C. § 1332(c).[5] Although newly amended section 1332(c) did not authorize Boeing, GE, or CFMI to seek removal more than thirty days after the statute became effective on May 18, 1989, the statute nevertheless rendered the parties completely diverse, based on the citizenship of the real parties in interest rather than their appointed representatives.[6] Thus, assuming that section 1441(d) statutorily authorizes removal of the entire case and not just the third-party claims, there is no constitutional impediment to adjudicating the main case between the appellants and the American defendants in federal

---

**5.** In removed cases, the existence of federal subject matter jurisdiction is determined at the time of removal. *See, e.g., In re Carter,* 618 F.2d 1093, 1101 (5th Cir.1980), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

**6.** The time limitation for removal is not jurisdictional; it is merely "modal and formal and may be waived." *Leininger v. Leininger,* 705 F.2d 727, 729 (5th Cir.1983); *see also Lirette v. N.L. Sperry Sun Inc.,* 820 F.2d 116, 117 (5th Cir.1987) (en banc) (statutory bar to removal of Jones Act claim may be waived by a litigant's failure to object to such removal in district court).

court. *Cf. Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1408 (9th Cir.1989) (existence of constitutional minimal diversity obviated any constitutional objection to federal court jurisdiction over pendent party claim to FSIA removal).

■ The federal courts, of course, do not automatically possess the authority to hear and determine all types of actions conceivably covered by the Constitution. The provisions of Article III specify only the outer limits of federal subject matter jurisdiction. Within those limits, however, the federal courts are authorized to hear only those cases that Congress by statute authorizes them to hear. *See Finley*, 109 S.Ct. at 2006 (1989).

■ Turning to the jurisdictional statute at issue here, then, the question becomes one of statutory construction—*i.e.*, whether section 1441(d) authorized removal not only of Boeing's third-party claims against the foreign sovereign SNECMA, but also of the plaintiffs' main claims. For this purpose, we must return to *Finley* again, and its admonition that, in defining the scope of jurisdictional statutes in federal court, heavy emphasis should be placed on the language of the particular statute in question. A statute granting jurisdiction over claims involving particular parties "does not itself confer jurisdiction over additional claims by or against different parties." *Finley*, 109 S.Ct. at 2010. Consequently, the Court in *Finley* held that the FTCA provision conferring jurisdiction on "civil actions on claims against the United States" does not authorize jurisdiction on claims against "pendent" parties over which no other jurisdictional basis could be found. 109 S.Ct. at 2008.

Appellants contend that *Finley* precludes removal of any claims other than Boeing's third-party demands against SNECMA. Section 1441(d), the removal statute enacted as part of the Foreign Sovereign Immunities Act, states:

Any civil action brought in a state court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury. Where removal is based upon this subsection, the time limitations of section 1446(b) of this chapter may be enlarged at any time for cause shown.

28 U.S.C. § 1441(d) (emphasis added).

Unlike the FTCA, the FSIA grants jurisdiction to the federal courts over "action[s]" and not just over "claims." This language is broad enough to extend federal court subject matter jurisdiction over the entire action in which the foreign state is a party, rather than simply over the "claims" in that action which are specifically asserted against the foreign state. As in *Finley*, the FSIA might be limited to claims brought "against a foreign state," but, unlike the FTCA, the FSIA allows the removal of *"any* civil action" against a foreign state. The Ninth Circuit aptly noted that this phrase "tends to affirmatively exclude the sort of unspoken qualification read into the statute in *Finley.*" *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1409 (9th Cir. 1989).

The distinctive language contained in the FSIA should be interpreted against a background of congressional understanding of the possibilities inherent in the doctrine of pendent jurisdiction. Congress enacted the FSIA well after the Supreme Court's decision in *Gibbs*, which authorized pendent claim jurisdiction. *See Teledyne*, 892 F.2d at 1409 (citing *Aldinger v. Howard*, 427 U.S. 1, 16–17, 96 S.Ct. 2413, 2421–22, 49 L.Ed.2d 276 (1976)). By contrast, the Court observed in *Finley* that Congress drafted the FTCA nearly twenty years before *Gibbs* at a time when pendent jurisdiction was not considered "remotely viable." 109 S.Ct. at 2010. As a result, the Court declined to ascribe pendent party significance to Congress's choice of language in drafting the FTCA. The same conclusion is not warranted with respect to the FSIA.

The structure of the Foreign Sovereign Immunities Act also counsels that section 1441(d) should effect removal of an entire action to federal court. As described in

one prominent hornbook, the intent of the FSIA was to render uniform in procedure and substance the treatment of foreign sovereigns subjected to suits in American courts. C. Wright & A. Miller, 14 *Federal Practice & Procedure* § 3662, at 394 (1984). Assuring the availability of a federal forum was intended to further these goals, to which a broad removal provision contributed.[7] Removal of a case under section 1441(d) does not require the joinder of all defendants, nor is it thwarted if one defendant resides in the district in which removal is sought—yet both of these conditions are placed upon removal of cases under 28 U.S.C. § 1441(b). These features led our Court to conclude that section 1441(d) authorized a foreign state co-defendant to remove the entire *action* to federal court and not merely the *claims* asserted against the foreign state. *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1375–76 (5th Cir.1980).[8]

Contrary to appellants' position, we can perceive no significant distinction between the authorization for removal of an entire action by a sovereign co-defendant, and removal of an entire action by a sovereign third-party defendant.[9] In fact, the interest of a sovereign third-party defendant in removing the entire case may be more compelling, because its liability is logically dependent on the liability of a defendant in the main action.[10] To protect itself fully, a third-party defendant like SNECMA could be called on to assert defenses on behalf of Boeing. *See* C. Wright & A. Miller, 6 *Federal Practice & Procedure* § 1444, at 316–21 (2d ed.1990); Fed.R.Civ.P. 14(c). The outcome of the main suit very much affects SNECMA's rights.

Legislative history also supports a broad interpretation of section 1441(d). In its section-by-section analysis of the FSIA, the House Judiciary Committee Report stated that

"[i]n view of the potential sensitivity of actions against foreign states ... it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts. New subsection (d) of section 1441 permits the removal of any such action at the discretion of the foreign state, *even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought.*"

H.R. No. 94–1487, 94th Cong., 2d Sess. 32, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6631 (emphasis added). By focusing on "actions" rather than "claims," the Committee Report reinforces the view that the FSIA grants federal jurisdiction over entire cases where a foreign state is a party. *Teledyne*, 892 F.2d at 1409. Elsewhere in the legislative history, the Judiciary Committee observed that jurisdiction under section 1441(d) extends to "cases *involving* foreign states." H.R. No. 94–1487, 94th Cong., 2d Sess. 12, *reprinted in* 1976 U.S.Code Cong. & Admin.

---

**7.** Describing the breadth of the Foreign Sovereign Immunities Act, Judge Friendly stated: "The courts must learn to accept that, in place of the familiar dichotomy of federal question and diversity jurisdiction, the Immunities Act has created a tripartite division—federal question cases, diversity cases and actions against foreign states." *Ruggiero v. Compania Peruana De Vapores, etc.,* 639 F.2d 872, 876 (2d Cir.1981).

**8.** We realize that *Arango* discusses pendent party jurisdiction in a manner now discredited by *Finley.* 621 F.2d at 1376, n. 6. For the reasons stated above, however, we adhere to *Arango's* construction of the scope of section 1441(d).

**9.** Since *Arango,* courts have continued to hold that when a foreign state removes an action to federal court, the entire action is removed and not just the claims against the sovereign. *See, e.g., Teledyne,* 892 F.2d at 1410; *Liberty Mutual Ins. Co. v. Insurance Corp. of Ireland, Ltd.,* 693 F.Supp. 340, 347 (W.D.Pa.1988); *Tucker v. Whitaker Travel Ltd.,* 620 F.Supp. 578, 581–82 (E.D. Pa.1985), *aff'd without opinion,* 800 F.2d 1140 (3d Cir.), *cert. denied,* 479 U.S. 986, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986); *Mori v. Port Authority of New York and New Jersey,* 100 F.R.D. 810, 812 (S.D.N.Y.1984); *In re Disaster at Riyadh Airport, Saudi Arabia,* 540 F.Supp. 1141, 1143 n. 1 (D.D.C.1982).

**10.** *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 376, 98 S.Ct. 2396, 2403–04, 57 L.Ed.2d 274 (1978). The factual prerequisite to SNECMA's liability to Boeing plainly derives from Boeing's alleged liability to appellants. *See* Fed.R.Civ.P. 14(c).

News 6604, 6610–11 (emphasis added). This wording is indistinguishable from language that the Supreme Court in *Finley* suggested was broad enough to create pendent party jurisdiction. *See Finley,* 109 S.Ct. at 2008; *Teledyne,* 892 F.2d at 1409.

In addition to the language of section 1441(d) itself, as we noted in *Arango,* the same or similar language in other specialized removal provisions has consistently been interpreted, albeit before *Finley,* to allow the removal of entire actions by third-party defendants. Thus, in *Spencer v. New Orleans Levee Board,* we held that 28 U.S.C. § 1442(a)(1)—which authorizes the removal of a "civil action" by a federal officer or agency sued in state court—permits a federal officer or agency to remove the "entire case" to federal court even though the removing party was a third-party defendant and only *some* of the claims in the case were asserted against the federal officer or agency. 737 F.2d 435, 437 (5th Cir.1984); *see also IMFC Prof. Servs. v. Latin Amer. Home Health, Inc.,* 676 F.2d 152, 158 (5th Cir.1982); *Johnson v. Showers,* 747 F.2d 1228, 1229 (8th Cir.1984); *M.A.I.N. v. Commissioner, Maine Dep't of Human Servs.,* 697 F.Supp. 557, 562 (D.Me.1988), *rev'd on other grounds,* 876 F.2d 1051 (1st Cir.1989). Courts have also approved removal of the entire action in cases of "civil actions" in tort against federal employees. 28 U.S.C. § 2679(d). *See, e.g., Arango,* 621 F.2d at 1376; *Sheridan v. DiGiorgia,* 372 F.Supp. 1373, 1374 (E.D. N.Y.), *aff'd without opinion,* 505 F.2d 727 (2d Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 671 (1975); *Cox v. Maddux,* 255 F.Supp. 517, 521 (E.D.Ark. 1966), *rev'd on other grounds,* 382 F.2d 119 (8th Cir.1967).

Appellants' special emphasis on the language of 28 U.S.C. § 1441(c) is, we believe, inappropriate. Section 1441(c) authorizes removal of "the entire case" to federal court if a separate and independent claim is amenable to federal jurisdiction. Relying on *Alifieris v. American Airlines, Inc.,* 523 F.Supp. 1189 (E.D.N.Y.1981), appellants argue that a foreign state sued as a third-party is entitled to remove only the third-party claim and not the entire civil action. *See also Filho v. Pozos Int'l Drilling Servs., Inc.,* No. H–87–2625 (S.D.Tex. July 7, 1988) (relying on *Alifieris* ). In *Alifieris,* the court reasoned that because Congress explicitly stated in section 1441(c) that "the entire case may be removed," the use of the term "action" in section 1441(d) must mean less than the entire case. 523 F.Supp. at 1192–93.

■ This proposed distinction between an "action" and a "case" finds no support in section 1441(d), the Federal Rules of Civil Procedure, or our holding in *Arango.* Nowhere in the FSIA did Congress draw any distinction between foreign state "defendants" and foreign state "third-party defendants," nor between a "case" and an "action." In federal practice, the terms "case" and "action" refer to the same thing, *i.e.,* the entirety of a civil proceeding, which necessarily includes any third-party claims. Federal Rule of Civil Procedure 2 provides that "[t]here shall be one form of action to be known as a 'civil action.' " *See also* Revision Notes to section 1441 (words such as " 'case,' 'cause,' 'suit,' and the like have been omitted and the words 'civil action' substituted in harmony with Rules 2 and 81(c) of the Federal Rules of Civil Procedure"). Rule 2 unequivocally establishes that a third-party claim is not a separate "action" that comprises part of a larger "case"; rather, it is a claim that becomes part and parcel of an existing action. The reasoning of *Alifieris* does not hold water.

The FSIA grants a foreign state defendant, even if it is a third-party defendant, a broad right of removal under section 1441(d). Unlike the FTCA, the FSIA makes no reference to claims against a party. Rather, the FSIA refers to an action, which is synonymous with the word "case" and in federal practice includes all claims made by all parties. We conclude that when a third-party defendant avails itself of removal jurisdiction under section 1441(d), at least where minimal diversity exists between the parties to the main claims, it removes not just the third-party claims but the main claims as well.

### III.

Appellants contend that even if section 1441(d) generally authorizes a third-party defendant to remove the entire action to federal court, this rule should not obtain when the state court has severed the third-party claims from the main claims. Because there was no severance in this case, we find it unnecessary to decide this issue.

Appellants made their *ex parte* motion to "sever" Boeing's third-party claims against SNECMA from appellants' claims against Boeing, GE, and CFMI pursuant to article 1038 of the Louisiana Code of Civil Procedure. Article 1038, however, does not provide for the "severance" of a lawsuit; rather, it gives trial courts the authority to order "separate trials."

> The court may order the separate trial of the principal and incidental actions, either on exceptions or on the merits; and after adjudicating the action first tried, shall retain jurisdiction for the adjudication of the other.
>
> When the principal and incidental actions are tried separately, the court may render and sign separate judgments thereon. When in the interests of justice, the court may withhold the signing of the judgment on the action first tried until the signing of the judgment on the other.

La.Code Civ.P. art. 1038.

Appellants argue that article 1038 contemplates a "severance" because it allows the trial court to render separate judgments in the separate trials ordered under that article. We disagree. While a complete severance results in the rendition of separate judgments, the converse is not automatically true. Separate judgments are not rendered *exclusively* in severed actions; they may also be rendered in a single lawsuit in which separate trials have been ordered. *See, e.g., Sparacello v. Andrews*, 501 So.2d 269, 273 (La.App.1986), *writ denied*, 502 So.2d 103 (La.1987); *Dunlap v. Birdwell*, 178 So.2d 804, 806 (La. App.1965); *Williams v. Diamond*, 367 So.2d 870, 870–71 (La.App.1978). The district court's interpretation of article 1038 to authorize only separate trials and not a true severance is entitled to great deference and should be reversed only if clearly wrong. *See Dial v. The Hartford Accident & Indemnity Co.*, 863 F.2d 15, 16 (5th Cir.1989). This is especially true when a statute is capable of varying interpretations. *Commonwealth Life Ins. Co. v. Neal*, 669 F.2d 300, 304 (5th Cir.1982). We find no such clear error. *See Phillips v. Unijax, Inc.*, 625 F.2d 54, 56 (5th Cir.1980) (holding that the "severance" of claims for purposes of separate trials does not create separate lawsuits for purposes of removal under 28 U.S.C. § 1441(c)).

### IV.

Appellants contend next that the district court committed error in dismissing these actions on *forum non conveniens* grounds without first allowing them to conduct discovery for purposes of proving collusion among the defendants to create federal subject matter jurisdiction. This is a frivolous argument.

28 U.S.C. § 1359 provides that a district court "shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Section 1359 is designed to prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction acquire a spurious status that would allow them to invoke the limited jurisdiction of the federal courts. The purpose of the statute is to prevent the manipulation of jurisdictional facts where none existed before—for example, through collusive assignments from a non-diverse party to a diverse party. *See, e.g., Gilbert v. Wills*, 834 F.2d 935 (11th Cir.1987); *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227 (5th Cir.1977); *O'Brien v. Avco Corp.*, 425 F.2d 1030 (2d Cir.1969); *Caribbean Mills, Inc. v. Kramer*, 392 F.2d 387 (5th Cir.1968), *aff'd*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969). No such impropriety occurred in this case.

Boeing has a substantial claim for contribution and indemnity against SNECMA,

hence there is nothing contrived about the foundation for federal jurisdiction here. As the First Circuit recently observed, "parties may legitimately try to obtain the jurisdiction of federal courts, as long as they lawfully qualify under some of the grounds that allow access to this forum of limited jurisdiction." *USI Properties Corp. v. MD Construction Co.*, 860 F.2d 1, 6 (1st Cir.1988), *cert. denied*, 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989). *See also Chicago v. Mills*, 204 U.S. 321, 330, 27 S.Ct. 286, 289, 51 L.Ed. 504 (1907) (a party's motive in preferring a federal tribunal is immaterial). Because the appellants offered no evidence that Boeing or SNECMA manufactured the jurisdictional facts necessary to remove this case to federal court pursuant to § 1441(d), the district court's denial of discovery was proper.

## V.

Appellants finally challenge the propriety of the district court's order dismissing their claims on *forum non conveniens* grounds. They contend that the record does not support the district court's determination and, alternatively, that even if the forum was inconvenient, the cases should have been remanded to state court rather than dismissed. We reject both arguments.

## A.

■ In this Circuit, "[o]ur duty as an appellate court in reviewing *forum non conveniens* decisions is to review the lower court's decision-making process and conclusion and determine if it is reasonable; our duty is not to perform a *de novo* analysis [of the record] and make the initial determination for the district court." *In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147, 1167 (5th Cir.1987), *vacated sub nom., Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 257–58, 102 S.Ct. 252, 266–67, 70 L.Ed.2d

419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982)).

■ In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court set out the two-step process that a district court must follow in addressing a *forum non conveniens* motion.[11] *Id.* at 507, 67 S.Ct. at 842. The court must first find that there is an adequate alternative forum in which to try the case. *Id.* If the court finds that such a forum exists, it must then consider various private and public interest factors in determining the propriety of a *forum non conveniens* dismissal. *Id.* at 508–09, 67 S.Ct. at 843. The district court considered each of these factors and set forth its findings in detail.

The district court determined that the United Kingdom—the home of most of the represented plaintiffs, the headquarters of the air carrier, and the site of the accident—constituted an adequate forum in which to resolve this dispute. Moreover, to insure "availability" of the forum, the court conditioned its dismissal order on the defendants' agreement to submit to jurisdiction in the United Kingdom.

The district court then carefully evaluated the private interests of the litigants. First, it noted that although the plaintiff's choice of forum must weigh in the balance, the choice of foreign plaintiffs merits less deference than that of American plaintiffs. *See In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1164 n. 26. In concluding that the U.K. would be the more convenient forum, the court noted the appellants' argument that the evidence regarding the design, assembly, manufacture, and testing of the aircraft is in the United States. However, the evidence regarding the crash itself and the actions of British Midland Airways—which is essential to the defendants' claim that pilot error caused the crash—is in the United Kingdom. *See Piper Aircraft*, 454 U.S. at 257–58, 102 S.Ct. at 266–67. The court also

---

**11.** The district court properly applied the federal law of *forum non conveniens* in addressing the defendants' motion. *See, e.g., In re Air*

*Crash Disaster Near New Orleans, Louisiana*, 821 F.2d at 1159.

noted that (1) substantially all of the damages evidence is in the U.K.; (2) many of the witnesses, most of whom were in the U.K., were beyond the compulsory process of the federal courts; and (3) the defendants would be unable to join BMA as a third-party defendant in the federal forum. In short, the district court found that all of the private interest factors favored the United Kingdom forum.

■ Appellants do not dispute most of the court's findings regarding the private interest factors. They argue only that the court erred in considering the inability of Boeing, CFMI, and GE to pursue contribution against BMA in the United States. We disagree. In *Comex v. Houlder Diving Ltd. v. Colne Fishing Co. Ltd.* [1987] S.L.T. 443, the House of Lords held that no right of contribution exists under Scottish law unless the right arises out of liability on a judgment rendered by the Scottish courts. Similarly, in *SNI Aerospatiale v. Lee Kui Jak* [1987] 3 All E.R. 510, 526, Lord Goff of the Privy Council intimated that English law may place limits on contribution similar to those imposed by Scottish law. We think that the district court correctly concluded that the potential problems posed by the inability to implead BMA as a third-party defendant supported holding the trial in the United Kingdom. *See Piper v. Reyno*, 454 U.S. at 259, 102 S.Ct. at 267–68; *Jennings v. Boeing Co.*, 660 F.Supp. 796, 806 (E.D.Pa.), *amended*, 677 F.Supp. 803 (E.D.Pa.1987), *aff'd*, 838 F.2d 1206 (3d Cir.1988) (proper to consider *Comex* and the inability to recover contribution in deciding *forum non conveniens* motion).

The district court also found the public interest factors to weigh in favor of the U.K. forum. None of the more than 100 plaintiffs in these sixteen cases is a U.S. resident or citizen. The accident occurred in England and English law would most likely govern the resolution of these cases. Moreover, the district court noted that a trial could last for months and found that

because the controversy had no connection whatsoever with the state of Louisiana, such onerous jury duty should not be imposed on the citizens of Louisiana.

Not disputing the validity of these findings, appellants merely assert that "it is normally inappropriate to dismiss a case involving a foreign sovereign on grounds of *forum non conveniens.*" Appellants cite no authority for this proposition and our recent decision in *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290 (5th Cir.1989), is directly to the contrary. *See also Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1380–81 (5th Cir. 1988).

After reviewing all of the factors and evidence considered by the district court, we conclude that the court acted neither unreasonably nor arbitrarily in dismissing these cases on the grounds of *forum non conveniens.*

### B.

■ Appellants argue alternatively that even if the federal forum is inconvenient, these sixteen cases should have been remanded to Louisiana state court rather than dismissed. Appellants cite our decision in *Camejo v. Ocean Drilling & Exploration Co.*, 838 F.2d 1374 (5th Cir.1988), as authority for the proposition that a federal court will remand rather than dismiss when a case is removed from a state court jurisdiction that would not dismiss on *forum non conveniens* grounds.[12]

In *Camejo*, we affirmed the district court's *forum non conveniens* dismissal of an admiralty case that had been removed to federal court despite the plaintiff's contention that the district court should have remanded the case to state court. Rejecting the plaintiff's argument, we observed:

The Texas state court where the action was originally filed is located in Houston, the same city as the federal district court that made the original *forum non conve-*

---

**12.** Under Louisiana law, there are only limited instances in which a case will be dismissed on *forum non conveniens* grounds. *Kassapas v. Arkon Shipping Agency*, 485 So.2d 565 (La.App.),

*writ denied,* 488 So.2d 203 (La.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). In this case, it does not appear that a Louisiana court would order such a dismissal.

*niens* analysis. The plaintiff also fails to allege any factors that would require a change in the result of the *forum non conveniens* analysis in the state court. Under *Chick Kam Choo,* which is the current precedent on point in this circuit, we therefore conclude that the district court did not abuse its discretion by deciding not to remand the case to the Texas state court.

*Camejo,* 838 F.2d at 1381–82.

Appellants suggest that this language implies that, had the state law of *forum non conveniens* been different from federal law, we would have remanded *Camejo* to state court. We disagree. In *Camejo,* this Court never reached, nor had to reach, the issue whether cases removed to federal court should be remanded when state and federal *forum non conveniens* law differ.

The primary purpose of *forum non conveniens* is to allow a court to resist impositions upon its jurisdiction and to protect the interests of parties to the litigation by adjudicating the claim in the most suitable and convenient forum. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). In *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147 (5th Cir.1987), we observed that a forum is suitable and convenient "when the entire case and all parties come within the jurisdiction of that forum." *Id.* at 1165. If this case were remanded to Louisiana state court, the defendants would be required to commence separate actions in the United Kingdom against British companies over whom the Louisiana courts would not have personal jurisdiction. Because the "entire case and all parties" would not be before it, the state court clearly is not a suitable and convenient forum. It would be anomalous to conclude that while a district court may properly invoke the federal law of *forum non conveniens* to decline jurisdiction over a properly removed case, it must order the case to be reinstituted in an equally if not more inconvenient forum. *See Piper,* 454 U.S. at 259, 102 S.Ct. at 266–67 (the overriding issue of importance in a *forum non conveniens* analysis is convenience).

As in *Camejo,* we have no occasion to issue any broad ruling that would suggest that a case may *never* be remanded to state court pursuant to the doctrine of *forum non conveniens.* We simply hold that, in this case, the district court did not abuse its discretion in declining to do so.

VI.

For the foregoing reasons, the judgment of the district court is AFFIRMED.