**TELEDYNE, INC., Teledyne Canada Limited, and Teledyne CM Products, Inc., Plaintiffs–Appellants,**

v.

**KONE CORPORATION, Outokumpu Oy and Rammer Oy, Finnish corporations, Defendants–Appellees.**

No. 88–6120.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 1989.

Decided Oct. 10, 1989.

As Amended Jan. 18, 1990.

James G. Hunter, Latham & Watkins, Chicago, Ill., and John J. Lyons and Michael H. Steinberg, Latham & Watkins, Los Angeles, Cal., for plaintiffs-appellants.

Michael Evan Jaffe, Lorie S. Gildea, and Sharon Lindan, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C., and Robert E. Freitas and W. Douglas Kari, Orrick, Harrington & Sutcliffe, Los Angeles, Cal., for defendants-appellees.

Before BROWNING, FARRIS and CANBY, Circuit Judges.

FARRIS, Circuit Judge:

A Canadian corporation brought suit in California state court against a private Finnish corporation and two state-owned Finnish corporations. The entire case was removed to federal district court and later dismissed on a series of jurisdictional grounds. This appeal raises difficult issues regarding the scope of removal jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330(a) and 1441(d), the interpretation of the Federal Arbitration Act, 9 U.S.C. § 2, and the application of settled principles of personal jurisdiction. We affirm.

## BACKGROUND

Teledyne Canada Limited is a Canadian corporation. In 1980, Kone Corporation, a privately-owned Finnish company, granted Teledyne an exclusive distributorship in the

United States for hydraulic breakers manufactured by Kone. Kone terminated this agreement on March 6, 1985.

Shortly thereafter, Kone and Teledyne began negotiating a new agreement. On April 10, 1986, representatives from both companies signed a document appointing Teledyne as the exclusive distributor of Kone's hydraulic breakers in the United States (and several other countries) for a period of three years with a three year option to renew. Although the document was signed, the front page stated: "DRAFT (to be finalized by KONE legal department)." No further action was taken with regard to this document by either party; Teledyne alleges no other outward manifestation of agreement. However, there is some evidence that Kone's insiders regarded the April 10 Draft as creating enforceable rights and obligations.[1] The Draft contained an arbitration provision which provides: "Any dispute which may arise between the parties in connection with this agreement shall be finally settled under the rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the rules."

During the time it was negotiating with Teledyne, Kone was also negotiating with Outokumpu Oy, an 81% state-owned Finnish corporation. Teledyne alleges that it first received notice of these negotiations on May 16, 1986, when Outokumpu publicly announced that it was in the process of purchasing Kone's hydraulic breaker division. On May 31, Kone transferred its hydraulic breaker division to Rammer Oy, Outokumpu's subsidiary. The parties dispute whether the transfer was simply an asset sale, or whether both assets *and* liabilities were passed to Rammer. Teledyne claims that the contract transferred whatever rights and obligations Kone had pursuant to the April 10 Draft.

Teledyne alleges that Kone, Outokumpu, and Rammer conspired to hide the details of the hydraulic breaker division sale, so that Teledyne would be delayed in either enforcing its rights under the April 10 Draft or finding an alternative supplier. It claims that the defendants first denied that obligations under the Draft were transferred to Rammer, then denied that the Draft was an enforceable contract, and finally made disparaging remarks about Teledyne's new product line. Teledyne claims that each of these actions was taken in bad faith and was motivated by the desire to handicap a competitor.

In 1987, Teledyne Canada, a Canadian subsidiary (Teledyne CM Products, Inc.), and an American subsidiary (Teledyne, Inc.) filed suit in Los Angeles Superior Court against Kone, Outokumpu, and Rammer. Outokumpu, as an instrumentality of a foreign state, removed the entire action to federal district court. The district court dismissed the claims against Kone on the ground that they were governed by the arbitration provision in the April 10 Draft. In so holding, the district court rejected the argument that it lacked subject matter jurisdiction. The court later dismissed all claims against Outokumpu and Rammer, holding that there was no personal jurisdiction and that California was an inconvenient forum.

## STANDARD OF REVIEW

 The issues of subject matter jurisdiction, personal jurisdiction, and dismissal under the Federal Arbitration Act are reviewed de novo. *See Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986); *Peter Starr Production Co. v. Twin Continental Films, Inc.,* 783 F.2d 1440, 1442 (9th Cir.1986). A dismissal on grounds of *forum non conveniens* is reviewed for abuse of discretion. *Timberlane Lumber Co. v. Bank of America,* 749 F.2d 1378, 1386 (9th Cir.1984), *cert. denied,* 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643 (1985).

---

1. On June 8, 1986, one of the Kone signatories to the Draft wrote in an internal memo that "[t]he draft of the new representation contract has been approved." In a document prepared as part of a later sale to Outokumpu, Kone listed the Teledyne agreement as a "contract" which was "valid" as of May 31, 1986.

## DISMISSAL OF CLAIMS AGAINST KONE

Teledyne argues that the trial court erred in dismissing its claims against Kone in favor of arbitration. As an initial matter, we must decide whether the trial court had jurisdiction to make this ruling.

### Subject Matter Jurisdiction

The general rule is that a cause of action may be removed to federal court only if it could have been brought originally in federal court. Teledyne sued Kone for breach of the 1980 contract and the 1986-Draft contract. These claims do not "arise under" federal law. They do not fall under 28 U.S.C. § 1332 because two nonresident aliens are not of "diverse citizenship." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). And they do not fall under familiar applications of "pendent jurisdiction" because Kone was not party to any federal claim to which the breach of contract claims could be appended. *Compare United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). At least in the absence of clear statutory authorization, *see Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 2007, 104 L.Ed.2d 593 (1989), federal jurisdiction does not extend to such "pendent parties." *See, e.g., Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Carpenters Southern California Administrative Corp. v. D & L Camp Construction Co.*, 738 F.2d 999 (9th Cir.1984); *Ayala v. United States*, 550 F.2d 1196 (9th Cir.1977), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).

■ The trial court read the Federal Sovereign Immunities Act as creating an exception to the pendent party rule. 28 U.S.C. § 1330(a) provides: "The district courts shall have original jurisdiction ... of *any* nonjury *civil action* against a foreign state." (Emphasis added). The applicable removal provision provides: "*Any civil action* brought in a State court against a foreign state ... may be removed by the foreign state." 28 U.S.C. § 1441(d) (emphasis added). Under the language of these provisions, removal of the entire "action" was appropriate because at least one of the defendants qualifies as a "foreign state." *See* 28 U.S.C. § 1603(a).

The trial court's conclusion that the Foreign Sovereign Immunities Act authorizes pendent party jurisdiction is in accord with a number of decisions from the other circuits. *See Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1377 (5th Cir. 1980); *Liberty Mutual Insurance Co. v. Insurance Corp. of Ireland*, 693 F.Supp. 340, 345 (W.D.Pa.1988). *See also Mori v. Port Authority of New York and New Jersey*, 100 F.R.D. 810, 812 (S.D.N.Y.1984); *In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980*, 540 F.Supp. 1141, 1143 n. 1 (D.D.C.1982). However, neither the Supreme Court nor this court has faced the issue.

It is true that we have regularly refused to permit the exercise of federal jurisdiction over parties for whom the only claim to such jurisdiction was the pendent jurisdiction doctrine of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). While *Gibbs* permits jurisdiction over nonfederal pendent claims, we have rejected the contention that it authorizes the addition of "pendent parties" over whom there is no independent basis of federal jurisdiction. *See, e.g., Safeco Ins. Co. v. Guyton*, 692 F.2d 551, 555 (9th Cir.1982); *Libby, McNeill and Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir.1978). We have also expressed doubt that Article III of the Constitution permits the exercise of such jurisdiction. *See Ayala v. United States*, 550 F.2d 1196, 1200 & n. 8 (9th Cir.1977), *cert. dismissed*, 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76 (1978).

In the present case, however, there is an independent basis for federal jurisdiction over the pendent party. This action falls within the scope of the constitutional grant of diversity jurisdiction, and Congress has authorized the exercise of that jurisdiction in suits against a foreign state filed pursuant to 28 U.S.C. § 1441(d). We therefore join those courts which have held that the

FSIA provides federal jurisdiction over pendent parties, at least where, as here, minimal diversity exists among the adverse parties.

### A.

Unlike state courts, the lower federal courts are courts of limited jurisdiction. "It remains rudimentary law that 'as regards all courts of the United States inferior to [the Supreme Court] two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it....'" *Finley,* 109 S.Ct. at 2006 (quoting *The Mayor v. Cooper,* 6 Wall. 247, 252, 18 L.Ed. 851 (1868)).

Article III extends the federal judicial power to "Controversies ... between Citizens of different States ... and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." Though the diversity statute, 28 U.S.C. § 1332, requires complete diversity among adverse parties, the constitutional authority for federal diversity jurisdiction is broader and is satisfied where any two adverse parties are of diverse citizenship. "Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens." *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 531, 87 S.Ct. 1199, 1204, 18 L.Ed.2d 270 (1967).

■ In the instant case, Teledyne Canada Limited and Teledyne CM Products, Inc., as Canadian Corporations, are citizens of Canada for the purposes of determining diversity jurisdiction. Teledyne, Inc., a domestic corporation, is a citizen of the states of Delaware and California. Each of the defendants is a Finnish corporation. Because Teledyne, Inc. is of diverse citizenship to the defendants, the constitutional requirement for minimal diversity has been met, and as is set forth in Part B, below, 28 U.S.C. § 1441(D) authorizes the exercise of our jurisdiction in this case.

The Supreme Court in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), identified two

limits to the exercise of federal judicial power pursuant to the "arising under" clause of Article III. To be cognizable in federal court, a case must "aris[e] under" federal law. The federal courts have authority over only those aspects of the dispute that are part of the same "case." Any number of claims which "derive from a common nucleus of operative fact" and would ordinarily be brought together constitute a single "case." The entire case "arises under" federal law if any of the component claims arise under federal law.

Because all the claims in this action do arise from a common nucleus of operative fact, we need not decide whether this limitation applies to our constitutional authority to adjudicate "controversies" where minimal diversity exists among the parties.

### B.

In addition to satisfying the limits of Article III, an exercise of federal jurisdiction must also be authorized by Congress. In the case of pendent claim jurisdiction, the Supreme Court has extended jurisdiction to the full extent authorized by *Gibbs* without conducting a close examination of the relevant jurisdictional statutes. *See Finley,* 109 S.Ct. at 2006 (citing cases). In *Finley,* the Court made clear that a different approach is required in the case of pendent party jurisdiction: "with respect to the addition of parties, as opposed to the addition of only claims, we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." 109 S.Ct. at 2007. Instead, *Finley* requires a close examination of statutory language and Congressional intent. *Id.* at 2008–10. *See also Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978).

Under this approach, the Supreme Court concluded in *Finley* that the Federal Tort Claims Act does not provide for pendent party jurisdiction. The Court relied on two factors. First, the FTCA extends jurisdiction over "civil actions on claims against the United States." Reading this language

narrowly, the Court interpreted it as meaning "against the United States and no one else." 109 S.Ct. at 2008. Second, the FTCA was drafted at a time before *Gibbs* when the notion of pendent party jurisdiction "was not considered remotely viable." *Id.* at 2010.

Unlike the situation in *Finley*, the constitutional basis for jurisdiction in this case is diversity. Nonetheless, we follow *Finley's* admonition to examine the jurisdictional statute closely and read it narrowly, since the effect of recognizing jurisdiction here, as in *Finley*, is to add parties to the federal action, not merely claims.

Under the FSIA, jurisdiction is extended over "action[s]" against a foreign state, not simply over *claims* against a foreign state. This language is broad enough to cover the entire suit as brought by Teledyne since it was an action brought, in part, against a foreign state. As in *Finley*, the statute *might* be limited to actions brought against a foreign state "and no one else." 109 S.Ct. at 2008. But unlike the FTCA, the FSIA extends federal jurisdiction over "*any* civil action" against a foreign state—a phrase which tends to affirmatively exclude the sort of unspoken qualification read into the statute in *Finley*. In addition, unlike the FTCA, the FSIA was drafted well after *Gibbs*, at a time when pendent party jurisdiction was considered a good deal more than a "remote" possibility. *See Aldinger*, 427 U.S. at 16–17, 96 S.Ct. at 2421 (analyzing whether 42 U.S.C. § 1983 authorizes pendent party jurisdiction) (decision filed four months *before* the enactment of the Foreign Sovereign Immunities Act). The plain language of a statute should be given considerably more weight when Congress can be expected to know the significance of what it writes.

The legislative history strongly suggests that the plain language of the FSIA accurately reflects Congressional intent. The House Report states:

> In view of the potential sensitivity of actions against foreign states ... it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts. New subsection (d) of section 1441 permits the removal of any such *action* at the discretion of the foreign state, *even if there are multiple defendants and some of these defendants [1] desire not to remove the action or [2] are citizens of the State in which the action has been brought.*

H.R. No. 94–1487, 94th Cong., 2d Sess. 32, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6631 (emphasis added). This passage is important in two respects. First, by focusing on "actions" rather than claims, it reinforces the view that the FSIA grants federal jurisdiction over entire cases where a foreign state is a party. Elsewhere the House Report states that jurisdiction is extended to "cases *involving* foreign states." *Id.* at 6610–11 (emphasis added). This formulation is virtually indistinguishable from examples given by the Supreme Court of language broad enough to create pendent party jurisdiction. *See Finley*, 109 S.Ct. at 2008.

Second, Congress explicitly drafted subsection 1441(d) as a provision to which the generally-applicable rules of removal do not apply. Ordinarily, a case may not be removed (1) if any defendant objects, or (2) in cases where jurisdiction is founded on diversity of citizenship, if any defendant is a citizen of the state in which the action was brought. *See Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193, n. 1 (9th Cir. 1988); 28 U.S.C. § 1441(b). Under the FSIA, these restrictions do not apply. If Congress had wanted nothing more than to assure foreign states the right to a federal forum, it could have provided for *separation* of the claims against the foreign state from claims against other parties. Instead, Congress opted to give foreign states the right to a federal forum, *and* the right to take non-consenting co-defendants along with them. At the very least, subsection 1441(d) expresses an intention to give sovereign foreign defendants an absolute right to a federal forum coupled with an unusually strong preference for the consolidation of claims. We conclude that those preferences are expressed strongly enough to overcome any presumption against pendent party jurisdiction.

The most straightforward reading of the legislative history of the FSIA is that Congress meant precisely what it said: the federal district courts have jurisdiction over "any civil action against a foreign state." The trial court properly held that it had jurisdiction over the claims against Kone.

*Federal Arbitration Act*

■ Having subject matter jurisdiction, the trial court properly dismissed the claims against Kone in favor of arbitration.[2]

The Federal Arbitration Act provides: "A written provision ... to settle by arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is undisputed that the 1986 Draft included a written provision to settle by arbitration "[a]ny dispute which may arise between the parties in connection with this agreement." The issue is whether there are grounds "at law or in equity" for not enforcing the agreement to arbitrate.

Teledyne argues that Kone has no right to enforce the arbitration provision because it has denied that a valid contract exists. If accepted, this argument would produce an absurd result: The district court could grant Teledyne relief on the contract only if it finds that the 1986 Draft was finalized. But if the 1986 Draft were final and valid, the arbitration provision would be valid as well since it has not been the subject of any independent challenge. And if the arbitration provision were valid, Teledyne's claims would not belong in federal court in the first place.

The federal courts have avoided such absurdities by requiring that cases be submitted to arbitration unless there is a challenge to the arbitration provision which is *separate* and *distinct* from any challenge to the underlying contract. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967). "The teaching of *Prima Paint* is that a federal court must not remove from the arbitrators consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." *Unionmutual Stock Life Ins. Co. v. Beneficial Life Ins. Co.,* 774 F.2d 524, 529 (1st Cir.1985).

Kone has argued that the 1986 Draft was never finalized. It has attacked the contract as a whole without making an "independent challenge" to the arbitration provision. It has thus not waived its right to have an *arbitrator* determine whether the 1986 Draft was finalized.

*Riess v. Murchison,* 384 F.2d 727 (9th Cir.1967), is not to the contrary. In *Riess,* we held that, under California law, a party who denies contractual responsibility may not enforce a contractual right to arbitration. 384 F.2d at 733. The federal rule is different, and this is an issue on which federal law controls. Under 9 U.S.C. § 2, general principles of law and equity are only relevant in determining whether there are grounds for an *independent* challenge to the arbitration clause, rather than a challenge to the arbitration clause which must rise or fall with a challenge to the contract as a whole. *Cf. Prima Paint,* 388 U.S. at 402–04, 87 S.Ct. at 1805–06. *Riess* does not fall within the narrow class of

**2.** We recognize, as we must, that the district court exercised pendent jurisdiction over Kone despite the fact that it dismissed the claims against Outokumpu and Rammer (which had supported removal) for lack of jurisdiction. Pendent jurisdiction in its original context is a doctrine of discretion, and if the federal claim is dismissed prior to trial, the pendent claims usually should be as well. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. This rule is not inflexible, however, and exercise of pendent jurisdiction, even after dismissal of claims giving rise to federal jurisdiction, is particularly appropriate

in this case for two reasons: first, the district court's ruling made it unnecessary for the court to conduct a trial; second, and most important, the district court's ruling was based on federal law, an application of the Federal Arbitration Act. *See Hagans v. Lavine,* 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974) ("considerations favoring state adjudication are wholly irrelevant where the pendent claim *is federal* but is itself beyond the jurisdiction of the District Court for failure to satisfy the amount in controversy.")

cases in which state law is relevant under the Federal Arbitration Act.

## DISMISSAL OF CLAIMS AGAINST OUTOKUMPU AND RAMMER

■ The trial court dismissed all of the claims against the sovereign defendants on the ground that it lacked personal jurisdiction. The court held in the alternative that these claims should be dismissed under the doctrine of *forum non conveniens*. We agree that the trial court lacked personal jurisdiction over Outokumpu and Rammer, and do not reach the second ground for dismissal.

Teledyne argues that the district court had personal jurisdiction under 28 U.S.C. §§ 1330 and 1605(a)(2). 28 U.S.C. § 1330(b) provides that "personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under Section 1608 of this title." Subsection (a) grants the district courts jurisdiction over claims against a foreign state where "the foreign state is not entitled to immunity ... under Sections 1605–1607 of this title." 28 U.S.C. § 1330(a). Subsection 1605(a)(2) denies sovereign immunity to foreign states for any action "based [1] upon a commercial activity carried on in the United States by the foreign state ... or [2] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Thus, under subsection 1605(a)(2), there is personal jurisdiction with respect to a sovereign foreign defendant whenever its acts have a "direct effect" in the United States, and the cause of action is "based upon" those acts. "The words 'direct effect' ... [embody] the minimum contacts standard of *International Shoe* [*Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)], and the requirement of *Hanson* [*v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)] that the defendant purposefully avail itself of the privi-

lege of conducting business within the forum." *Thos. P. Gonzales Corp. v. Consejo Nacional,* 614 F.2d 1247, 1255 (9th Cir. 1980) (citations omitted). *See also* H.R. No. 94–1487, 94th Cong. 2d Sess. 13, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604, 6612.

Teledyne's complaint alleges causes of action for product disparagement, unfair competition, tortious interference with contract, intentional interference with prospective business advantage, and breach of the implied covenant of good faith and fair dealing. None of the "acts" on which these claims are based occurred in or was directed toward America. Teledyne has the burden of proving that the exercise of jurisdiction over the non-resident defendants comports with the due process clause. *See Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir. 1986). All that it has shown is that the defendants, while in Finland, performed acts detrimental to a corporation in Canada, and that this conduct may have had foreseeable effects in the United States. Teledyne has failed to show that the defendants' acts were "purposefully directed" toward the United States. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987). *Compare Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) ("intentional, and allegedly tortious, actions ... *expressly aimed at California* ... that [defendants] knew would have a potentially devastating impact upon [a California plaintiff]" sufficient to support jurisdiction over defendants in California) (emphasis added).

The only actions by the defendants which were directed toward the United States were the sales they made to American purchasers through a distributor appointed to serve the United States. However, because the five causes of action are in no way "based upon" these actions, there is no personal jurisdiction under 28 U.S.C. § 1605(a)(2).³ Teledyne relies only on sub-

---

**3.** One way of expressing the point is that subsec- tion 1605(a)(2) does not recognize general in

section 1605(a)(2). We thus need not decide whether the defendants' forum contacts might give rise to personal jurisdiction under some other long-arm provision.

■ In order to satisfy due process standards, an exercise of personal jurisdiction must be reasonable. *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir.1986). This factor also supports the trial court's decision to dismiss the claims against the Finnish defendants. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114, 107 S.Ct. at 1034. *See also Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1243 (9th Cir.1984) ("It would not comport with fair play and substantial justice to assert jurisdiction over a West German corporation in the distant forum of California on a claim that arises out of activities in Europe, where the corporation had no contact with California other than a developing sales market.")

## CONCLUSIONS

We hold that the Foreign Sovereign Immunities Act authorizes pendent party jurisdiction. The district court had subject matter jurisdiction over the claims against Kone, and properly dismissed those claims in favor of arbitration. The court also properly dismissed the claims against Outokumpu and Rammer on the ground that it lacked personal jurisdiction.

AFFIRMED.

personam jurisdiction. The cause of action *must relate* to—or be "based upon"—acts which occurred in or were directed toward the United States. *See* 28 U.S.C. § 1605(a)(2).