NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2527
_____

In Re: Asbestos Products Liability Litigation

North Dakota Pipefitter II Group Plaintiffs,
Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action Nos. 01-md-00875, 09-cv-66582, *et seq.*)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
May 21, 2013
_____

Before: RENDELL, GREENAWAY, JR., and GARTH, *Circuit Judges*.

(Opinion Filed: September 6, 2013)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

This appeal comes to us from Multidistrict Litigation case number 875 ("MDL

875" or "Asbestos MDL"), which involves several thousand asbestos cases from around

the country. Appellants, forty-four plaintiffs designated as the "North Dakota Pipefitter

II Group Plaintiffs" ("Appellants"),[1] appeal the District Court's sua sponte dismissal of their claims (the "Pipefitter II cases") for failure to prosecute, as well as the District Court's denial of their motion for reconsideration. Appellants also appeal the District Court's denial of their motion to remand the actions to North Dakota state court.[2] For the following reasons, we will affirm in part and vacate and remand in part.

## I. BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Appellants' cases began as asbestos-related personal injury/wrongful death actions in North Dakota state court in 1990 (the "single-plaintiff actions").[3] In February 1990, the Pipefitter II cases were removed by defendant Asbestos Corporation Limited ("ACL") to the United States District Court for the District of North Dakota under 28 U.S.C. § 1441(d).[4] Each case was removed in its entirety, including Appellants' claims against the other, non-foreign, defendants. In July 1991, the Pipefitter II cases were

---

[1] One additional case that does not form part of the Pipefitter II cases — *Hanson v. ACandS, Inc.*, No. 09-66701 — was subject to the District Court's order of dismissal and forms part of this appeal. Therefore, there are forty-five cases at issue in this appeal.

[2] Only the forty-four North Dakota Pipefitter II Group Plaintiffs appeal the District Court's denial of the motion to remand.

[3] The *Hanson* case was filed in the District Court for the District of North Dakota in 2000 and was consolidated as part of MDL 875 in 2001.

[4] Section 1441(d) allows a foreign state to remove any civil action brought against it in a state court to federal district court, and ACL, whose majority stockholder was Quebec, Canada, qualified as an instrumentality of a foreign state under 28 U.S.C. § 1603.

consolidated in the United States District Court for the Eastern District of Pennsylvania as part of MDL 875.[5]

In 1995, after ACL settled its claims with Appellants and was dismissed from the litigation, Appellants filed a motion to remand the single-plaintiff actions to state court, arguing that the District Court lacked subject matter jurisdiction over the remaining non-foreign defendants. The District Court delayed in addressing the motion and denied it on February 12, 2010.

On February 21, 2012, the District Court entered an Order (the "February 21 Order") directing Appellants to file a status update in each of the forty-four Pipefitter II cases, as well as in *Hanson v. ACandS, Inc.*, No. 09-66701, by March 2, 2012.[6] Counsel for Appellants failed to respond to the Order, and on March 27, 2012, the District Court entered an Order sua sponte dismissing all forty-five Appellants' cases without prejudice for lack of prosecution, pursuant to Federal Rule of Civil Procedure 41(b). Although the

---

[5] In 1992, Appellants also commenced a multiple-plaintiff action against several other defendants, including Appellee Foster Wheeler LLC ("Appellee"), in the United States District Court for the District of North Dakota, based on diversity jurisdiction. The multiple-plaintiff action was transferred to the Eastern District of Pennsylvania as part of MDL 875. In 2009, the multiple-plaintiff action was severed into forty-four cases, and each plaintiff's case was consolidated with that plaintiff's corresponding single-plaintiff action. The forty-four cases that make up the Pipefitter II cases now consist of the originally filed single-plaintiff actions, as well as the defendants named in the multiple-plaintiff action.

[6] The District Court had initially entered an Order on February 16, 2012, requesting a status update from only eleven Appellants. Appellants' counsel sent an email to the District Court, informing the Court that the status order should have been directed to the larger group of forty-four Pipefitter II cases, plus the *Hanson* case. The District Court vacated its February 16, 2012 Order and issued its February 21 Order requesting a status update in all forty-four Pipefitter II cases and *Hanson*.

3

District Court dismissed Appellants' actions "without prejudice," the statute of limitations precludes Appellants from re-filing their complaints.

Appellants filed a motion for reconsideration, in which they explained that each of the Pipefitter II cases and *Hanson* had already passed through dispositive motion practice, which involved vigorous adversary litigation by Appellants' counsel. Appellants explained that counsel never received the February 21 Order because it was filed at a time when counsel's email provider had placed a limit on his incoming email, and counsel was not receiving email messages. As a result, the February 21 Order was never entered into counsel's calendaring system.[7] Appellants argued that the failure to respond to the February 21 Order was an isolated and inadvertent incident, and that otherwise, counsel had actively participated in and litigated the Pipefitter II cases for over two decades. On April 27, 2012, the District Court denied Appellants' motion for reconsideration.

On May 25, 2012, Appellants filed a timely notice of appeal from the District Court's orders.

## II.   JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1330 and 1332. We have appellate jurisdiction under 28 U.S.C. § 1291.[8]

---

[7] Appellants' counsel also claimed that the timing of the February 21 Order coincided with litigation events in other pending cases.

[8] Although the District Court dismissed Appellants' actions "without prejudice," we nevertheless may treat the District Court's dismissal as a final, appealable order because

4

We review de novo the District Court's denial of Appellants' motion to remand, because whether subject matter jurisdiction exists is a legal question over which we exercise plenary review. *See Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279 (3d Cir. 2013).[9] We review a district court's dismissal for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) for abuse of discretion. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002). We also review the denial of a motion for reconsideration for abuse of discretion. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 163 (3d Cir. 2010).

## III.   ANALYSIS

### A.   Subject Matter Jurisdiction

Appellants argue that the District Court lacked subject matter jurisdiction over the single-plaintiff actions that were removed from North Dakota state court, and that, therefore, the single-plaintiff actions should be remanded to state court under 28 U.S.C. § 1447(c).[10] Appellants do not dispute that ACL, an instrumentality of a foreign state,

---

the statute of limitations precludes Appellants from re-filing their complaints. *See Core Commc'ns, Inc. v. Verizon Pa., Inc.*, 493 F.3d 333, 338 (3d Cir. 2007).

[9] Once we determine that subject matter jurisdiction exists, however, we review the District Court's decision to continue to exercise jurisdiction for abuse of discretion. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).

[10] The Parties agree that the question of subject matter jurisdiction applies only to the single-plaintiff actions which were originally filed in North Dakota state court. The motion to remand did not apply to the multiple-plaintiff action which was filed directly in federal district court, and which was subsequently consolidated with the single-plaintiff actions, nor to *Hanson*, which was also filed in federal district court.

We note that Appellants did not list the District Court's February 12, 2010 Order in their Notice of Appeal. Appellants filed a Notice of Appeal only as to the March 27, 2012 and April 28, 2010 Orders. "In normal course, we would confine our review to the

5

properly invoked 28 U.S.C. § 1441(d) to remove the claims against it from state court to federal court. Appellants contend, however, that the District Court lacked pendent party jurisdiction over the remaining non-foreign defendants, and that, therefore, the claims against the remaining defendants were improperly removed to federal court. We disagree.

Because there is not complete diversity between the plaintiffs and the defendants in the single-party actions, diversity jurisdiction under 28 U.S.C. § 1332 cannot provide a basis for federal jurisdiction over the remaining non-foreign defendants.[11] Also, federal question jurisdiction under 28 U.S.C. § 1331 is not present here. 28 U.S.C. § 1367(a) expressly provides for supplemental jurisdiction over additional parties where a district court has original jurisdiction over the action. However, because § 1367 was not in effect at the time these actions were removed from state court, it does not apply to this case. *See More v. Intelcom Support Servs., Inc.*, 960 F.2d 466, 473 (5th Cir. 1992) (explaining that 28 U.S.C. § 1367 "affects only cases filed on or after December 1, 1990" (citing

---

[two] issue[s] appealed . . . ." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 269 (3d Cir. 2012). However, because we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), we must resolve the issue of whether the District Court had subject matter jurisdiction in this case. *See also Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("Under this Court's continuing obligation to assess its subject matter jurisdiction, we can dismiss a suit sua sponte for lack of subject matter jurisdiction at any stage in the proceeding.").

[11] The single-plaintiff actions filed in North Dakota state court each involved plaintiffs who were either North Dakota or Minnesota residents. Each case involved several defendants, many of whom were out-of state corporations (e.g., Ohio, New York, Connecticut, Illinois, Delaware, Pennsylvania, Vermont, and Alabama corporations); however, at least one defendant in each action was a North Dakota or Minnesota corporation, thereby destroying complete diversity under 28 U.S.C. § 1332.

Civil Justice Reform Act of 1990, Pub. L. No. 101-650, § 310(c), 104 Stat. 5089, 5113, 5114)).

Appellants correctly note that the single-plaintiff actions were removed from state court to federal court after the Supreme Court had decided *Finley v. United States*, 490 U.S. 545 (1989), but before Congress passed the Judicial Improvements Act of 1990, which added 28 U.S.C. § 1367 and effectively overruled *Finley* by restoring pendent party jurisdiction. *See* 28 U.S.C. § 1367 cmt. ("The last sentence of subdivision (a) of § 1367 provides that supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. With that last sentence, *Finley* and *Aldinger* are overruled and pendent party jurisdiction is allowed . . . ."); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1509 (3d Cir. 1996) (explaining that Congress passed § 1367(a) to grant supplemental jurisdiction to the limits of Article III, and to restore pre-*Finley* understandings of pendent party jurisdiction). This case, therefore, "may have fallen through a jurisdictional hole in time," *More*, 960 F.2d at 473, and is part of a narrow set of cases where post-*Finley*, but pre-§ 1367 law regarding pendent party jurisdiction applies.

Despite Appellants' contentions to the contrary, however, the removal statute at issue here, 28 U.S.C. § 1441(d), provides a basis for federal jurisdiction over the remaining non-foreign defendants, and can be distinguished from the Supreme Court's discussion of the Federal Tort Claims Act in *Finley*.

In *Finley*, the Supreme Court addressed whether a federal court hearing a cause of action against the United States under the Federal Tort Claims Act ("FTCA") had

7

jurisdiction over a non-diverse, non-federal cause of action against another defendant, arising from the same set of facts. The Court looked skeptically at the exercise of pendent party jurisdiction, which it defined as "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley*, 490 U.S. at 549. The Court explained that even if the exercise of pendent party jurisdiction was permissible under Article III, "with respect to the addition of parties . . . we will not assume that the full constitutional power has been congressionally authorized, and will not read jurisdictional statutes broadly." *Id.* It therefore cautioned that "[r]esolution of a claim of pendent-party jurisdiction . . . calls for careful attention to the relevant statutory language." *Id.* at 550 (internal quotation marks omitted). The Court then examined the language of the FTCA and found that the statute as written — which "confers jurisdiction over 'civil actions on *claims* against the United States'" — defines jurisdiction in a manner that "does not reach defendants other than the United States." *Id.* at 552-53 (emphasis added) (quoting 28 U.S.C. § 1346(b)). Therefore, the Court held that the FTCA did not allow for a federal court to exercise pendent party jurisdiction over additional parties absent some other basis of federal jurisdiction.

Here, however, unlike the FTCA, 28 U.S.C. § 1441(d) provides a basis for federal jurisdiction over the remaining non-foreign defendants. The Fifth and Ninth Circuits addressed this same issue post-*Finley* and pre-§ 1367 and both held that where there is at least minimal diversity between the adverse parties, § 1441(d) provides for federal jurisdiction over pendent parties. *See Nolan v. Boeing Co.*, 919 F.2d 1058, 1064-66 (5th

8

Cir. 1990); *Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1407-08 (9th Cir. 1990).[12] We agree with our sister circuits.

          1.      <u>Minimal Diversity</u>

As an initial matter, where minimal diversity exists among the adverse parties, there is no constitutional impediment to a federal court hearing the claims of pendent parties. Article III extends the judicial power of federal courts to "[c]ontroversies . . . between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." U.S. Const. art. III, § 2, cl. 1. "This language merely requires minimal diversity in order to maintain a claim in federal court," and therefore, "as long as any two adverse parties are not co-citizens, the Constitution poses no obstacle to the federal courts' exercise of subject matter jurisdiction." *Nolan*, 919

---

[12] Moreover, since the enactment of § 1367, the other courts of appeals to address actions removed under § 1441(d) have likewise relied on the plain language of § 1441(d) to hold that the statute allows a foreign-state defendant to remove an *entire action* from state court to federal court, and for the district court to exercise pendent party jurisdiction over non-foreign defendants. *See Davis v. McCourt*, 226 F.3d 506, 510 (6th Cir. 2000) ("Both the statutory interpretation of 'civil action' and history behind the [Foreign Sovereign Immunities Act] lead this Court to follow the other circuits in holding that 28 U.S.C. § 1441(d) not only authorizes the removal of an action involving a foreign third-party defendant, but also that it authorizes the removal of the entire case, even if there are nonforeign defendants."); *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932, 942 (7th Cir. 1996) (noting that "[n]early all courts to have considered this issue have . . . held that where minimal diversity exists between parties, a foreign state may invoke § 1441(d) to remove an entire suit," and holding that § 1441(d) allows for pendent party jurisdiction); *In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1258-59 (11th Cir. 1992) ("[T]he language and legislative history of § 1441(d) lead us to conclude that, where a claim has been filed against a foreign state, Congress did not intend removal jurisdiction to be limited to some subset of the claims or parties involved in that action . . . [because] the use of 'any civil action' in § 1441(d) was clearly meant to grant removal jurisdiction over more than just the 'claims' asserted against a foreign state.").

F.2d at 1063; *see also Teledyne*, 892 F.2d at 1408 ("Though the diversity statute, 28 U.S.C. § 1332, requires complete diversity among adverse parties, the constitutional authority for federal diversity jurisdiction is broader and is satisfied where any two adverse parties are of diverse citizenship.").

Here, at the time the single-plaintiff actions were removed from state court to federal court, minimal diversity existed among the adverse parties.[13] The plaintiffs were North Dakota or Minnesota residents and each complaint named several corporations as defendants, including corporations from Ohio, New York, Connecticut, Illinois, Delaware, Pennsylvania, Vermont, and Alabama. Therefore, there is no constitutional impediment to the District Court's exercise of jurisdiction over the non-foreign defendants in this case.

### 2. Statutory Interpretation

"In addition to satisfying the limits of Article III, an exercise of federal jurisdiction must also be authorized by Congress." *Teledyne*, 892 F.2d at 1408. The statutory provisions at issue here are 28 U.S.C. §§ 1330 and 1441(d), which form part of the Foreign Sovereign Immunities Act ("FSIA").

---

[13] For purposes of determining whether we have subject matter jurisdiction, "our inquiry is limited to examining the case as of the time it was filed in state court." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (internal quotation marks omitted). In determining whether removal was proper, therefore, we "focus on the plaintiff's complaint at the time the petition for removal was filed . . . [and] must assume as true all factual allegations of the complaint." *In re Briscoe*, 448 F.3d 201, 217 (3d Cir. 2006) (internal quotation marks omitted).

Section 1441(d) states in relevant part: "*Any civil action* brought in a State court against a foreign state . . . may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d) (emphasis added). The basis for federal jurisdiction in such an action arises from 28 U.S.C. § 1330(a), which provides that "[t]he district courts shall have original jurisdiction without regard to amount in controversy of any nonjury *civil action* against a foreign state." 28 U.S.C. § 1330(a) (emphasis added).

The fact that the FSIA refers to "action[s]" rather than "claims" is significant. As the Fifth Circuit explained,

> Unlike the FTCA, the FSIA grants jurisdiction to the federal courts over "action[s]" and not just over "claims." This language is broad enough to extend federal court subject matter jurisdiction over the entire action in which the foreign state is a party, rather than simply over the "claims" in that action which are specifically asserted against the foreign state.

*Nolan*, 919 F.2d at 1064.

The fact that the FSIA "extends federal jurisdiction over '*any* civil action' against a foreign state . . . tends to affirmatively exclude the sort of unspoken qualification read into the [FTCA] in *Finley*." *Teledyne*, 892 F.2d at 1409. This language distinguishes claims removed under § 1441(d) from the Supreme Court's interpretation of the FTCA in *Finley*, and supports a holding that § 1441(d) allows for the removal of an *entire action* from state court whenever a foreign state is a defendant. *See Kaiser v. Mem'l Blood Ctr. of Minneapolis, Inc.*, 977 F.2d 1280, 1283 n.1 (8th Cir. 1992) ("Cases involving the removal provision of the FSIA, 28 U.S.C. § 1441(d), can arguably be distinguished [from

11

*Finley*] on the ground that, unlike removal in general, Congress intended the FSIA to be a broad removal provision in order to . . . assur[e] the availability of a federal forum.").

The legislative history of the FSIA also supports the position that Congress intended for *entire actions* involving foreign states to be removed to federal court, and for the district courts to exercise pendent jurisdiction over non-foreign defendants. The House Report states:

> In view of the potential sensitivity of actions against foreign states . . . it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts. New subsection (d) of section 1441 permits the *removal of any such action* at the discretion of the foreign state, *even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought*.

H.R. Rep. No. 94-1487 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6631, 1976 WL 14078 (emphasis added). The Report also states that the FSIA sets forth "the jurisdiction of U.S. district courts in cases *involving* foreign states." *Id.* at 6610 (emphasis added). This language is particularly relevant for two reasons. First, by focusing on "actions" rather than "claims," this passage reinforces the view that the FSIA grants federal jurisdiction over entire cases where a foreign entity is a defendant. *Teledyne*, 892 F.2d at 1409; *Nolan*, 919 F.2d at 1065-66. Second, Congress explicitly provided that the generally-applicable rules of removal do not apply to the FSIA — a foreign state can remove an action without the consent of other defendants, and can remove an action even if one of the defendants is a citizen of the state in which the action has been brought. This language contemplates that non-foreign defendants — even those who are citizens

12

of the state where the action is filed — may be removed to federal court along with the foreign-state defendant.  As the Ninth Circuit explained,

> If Congress had wanted nothing more than to assure foreign states the right to a federal forum, it could have provided for *separation* of the claims against the foreign state from claims against other parties.  Instead, Congress opted to give foreign states the right to a federal forum, *and* the right to take non-consenting co-defendants along with them.  At the very least, subsection 1441(d) expresses an intention to give sovereign foreign defendants an absolute right to a federal forum coupled with an unusually strong preference for the consolidation of claims.  We conclude that those preferences are expressed strongly enough to overcome any presumption against pendent party jurisdiction.

*Teledyne*, 892 F.2d at 1409.  Moreover, allowing for a foreign state to remove an entire action in which it is a defendant to a federal forum comports with the congressional intent behind the FSIA: "to create a uniform body of law (and minimize potential international friction) by establishing federal courts as the preferred forum for cases involving foreign states."  *In re Air Crash Disaster Near Roselawn, Ind. On Oct. 31, 1994*, 96 F.3d 932, 942 (7th Cir. 1996) (citing House Report, 1976 U.S.C.C.A.N. at 6631).

Given the statutory language of § 1441(d) and the legislative history, we conclude that, when a foreign-state defendant removes an action under the FSIA, the district court is empowered to exercise jurisdiction over the entire action, including claims against other non-foreign defendants.  *See Nolan*, 919 F.2d at 1066 (holding that when a defendant avails itself of removal jurisdiction under § 1441(d), it removes the entire case to federal court); *Teledyne*, 892 F.2d at 1407-08 (holding that the FSIA provides jurisdiction over pendent parties); *see also Trump Taj Mahal Assocs. v. Construzioni Aeronautiche Giovanni Agusta, S.p.A.*, 761 F. Supp. 1143, 1153 (D.N.J. 1991) (holding

13

that the FSIA provides for pendent party jurisdiction over non-foreign defendants).[14]

Therefore, the District Court had subject matter jurisdiction over the single-plaintiff

actions, and it properly denied Appellants' motion to remand the actions to state court.[15]

### B. Sua Sponte Dismissal Pursuant to Federal Rule of Civil Procedure 41(b)

Appellants also challenge the District Court's dismissal of the Pipefitter II cases

and *Hanson* for failure to prosecute. For the reasons below, we will vacate the dismissal

and remand the actions to the District Court.

---

[14] Appellant relies on two district court decisions from this Circuit that held that the FSIA does not provide for pendent party jurisdiction after *Finley*. *See Deptula v. Derr Flooring Co.*, No. 97-CV-3857, 1990 WL 96635, at \*2-3 (E.D. Pa. July 6, 1990); *Birkinshaw v. Armstrong World Indus., Inc.*, 715 F. Supp. 126, 127 (E.D. Pa. 1989). However, in light of the foregoing discussion, we decline to follow the reasoning from these cases.

[15] Moreover, the fact that ACL is no longer a party to the litigation does not deprive the District Court of subject matter jurisdiction, as long as jurisdiction existed at the time the action was removed from state court. *See Standard Fire Ins. Co.*, 133 S. Ct. at 1349 (noting that in determining jurisdiction, "our inquiry is limited to examining the case as of the time it was filed in state court " (internal quotation marks omitted)); *see also New Rock Asset Partners*, 101 F.3d at 1506 ("[W]here the jurisdiction-conferring party drops out and the federal court retains jurisdiction over what becomes a state law claim between non-diverse parties, the bounds of Article III have not been crossed."). Nor does this case present a situation similar to *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274, 1285 (4th Cir. 1994), where the foreign entity was dismissed from the action before the district court had the opportunity to exert authority over the case. ACL remained a party to the actions for several years after the actions were removed to federal court.

The decision to continue to exercise jurisdiction after the dismissal of ACL is left to the district court's discretion, *see Kach*, 589 F.3d at 634, and the District Court did not abuse its discretion in denying the motion to remand. Appellants do not argue that the District Court abused its discretion in retaining jurisdiction, but focus entirely on the argument that the District Court lacked subject matter jurisdiction in the first instance.

14

Although we review the District Court's dismissal of Appellants' actions for an abuse of discretion, we have cautioned that "dismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 260 n.1 (3d Cir. 2011).[16]

In *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984), we set out six factors that district courts should consider before dismissing a complaint as a sanction under Rule 41(b). These factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Emerson*, 296 F.3d at 190 (citing *Poulis*, 747 F.2d at 868). Recognizing that dismissal is a drastic sanction, we have required courts to consider the *Poulis* factors before dismissing a complaint under Rule 41(b). *See In re Asbestos Prods. Liab. Litig. (No. VI)*, — F.3d —, 2013 WL 2364088, at *6 (3d Cir. 2013) ("To determine if the District Court abused its discretion in dismissing a case under Rule 41(b), we review the manner in which it balanced the six factors enumerated in [*Poulis*]."); *United States v.*

---

[16] Although the District Court dismissed Appellants' complaints without prejudice, Appellants' actions were originally filed in 1990 and 2000, and the statute of limitations would prevent them from re-filing. Therefore, we will treat the dismissal as barring the resolution of Appellants' claims. *Cf. Core Commc'ns*, 493 F.3d at 338 (explaining that where the statute of limitations prevents a plaintiff from re-filing her complaint, an order dismissing a complaint without prejudice is a final order).

15

*$8,221,877.16 in U.S. Currency*, 330 F.3d 141, 161-62 (3d Cir. 2003) (reversing district court's dismissal because it did not properly consider the *Poulis* factors).

This concern is amplified when the dismissal is sua sponte. In *Briscoe v. Klaus*, 538 F.3d 252, 258 (3d Cir. 2008), we warned that, although a district court may dismiss a case sua sponte, "it should use caution in doing so because it may not have acquired knowledge of the facts it needs to make an informed decision." There, we held that a district court "should provide the plaintiff with an opportunity to explain his reasons for failing to prosecute the case or comply with its orders prior to dismissing a case sua sponte." *Id.* Accordingly, "we will not hesitate to remand a case to the district court when the judge dismisses a case sua sponte without an indication that *Poulis* was considered." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 2013 WL 2364088, at *8.

Here, the District Court did not consider the *Poulis* factors, nor did it provide Appellants with an opportunity to explain their failure to comply with its February 21 Order before dismissing their cases sua sponte.[17] We therefore vacate the District Court's March 27, 2012 and April 27, 2012 Orders.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the District Court's February 12, 2010 Order. We vacate the District Court's March 27, 2012 and April 27, 2012 Orders and remand for proceedings consistent with this Opinion.

---

[17] The District Court may have ruled precipitously here, given the longstanding litigation and Appellants' otherwise active participation in the prosecution of the Pipefitter II cases. However, because we are remanding this matter to the District Court for it to apply the *Poulis* factors in the first instance, we need not opine on the merits of the dismissal.